## EMILY CURTIS *vs.* JANE CURTIS.

An indenture made in another state, between citizens thereof, by which a mother, after the death of the father, commits a child to the care and custody of a trustee of a society of Shakers, to be brought up and instructed according to their principles and usages, is binding on the mother, although not in the form prescribed by the laws of that state in order to bind the child; and if the child be well cared for by the Shakers, and, being of sufficient mind and capacity to judge, desire to remain with them, the mother will not be allowed to reclaim her.

HABEAS CORPUS, issued on the 25th of January 1856, on the petition of Emily Curtis, a minor of sixteen years of age, " by her guardian and next friend, Joseph Fairbank of Enfield in the State of Connecticut," representing that she was restrained of her liberty by her widowed mother, Jane Curtis, claiming her services as her mother and natural guardian ; that on the 8th of October 1851 the said Jane Curtis, at Enfield, by an indenture executed by said Jane and said Fairbank, placed the said Emily and her two other children, one four, and the other six years younger than said Emily, under the care and direction of Fairbank, " to be by him brought up, educated and instructed according to the usages, principles and rules of the society [of Shakers] of which the said Fairbank is a member, and also a trustee ; and to ' dwell with and faithfully serve the said Fairbank, and his lawful requirements at all times readily obey, until the said children or either of them is of lawful age ; " and the said Jane did thereby " covenant with said Fairbank and his legal representatives or successors, in case of his decease, that she will not hereafter, either directly or indirectly, cause the said minors, or either of them, to leave the service of said Fairbank, or his legal representatives, or successors in trust, during their minority."

The petitioner further represented that on the 8th of October 1851 she went to reside with the family of Shakers at Enfield under the direction of Fairbank ; that she was instructed, and provided with comfortable food, clothing and lodging, and in all things well cared for according to the terms of said indenture

and was contented and happy; that on the 27th of April 1852, at a probate court held at Enfield for the district of Enfield and State of Connecticut, she, then being more than twelve years of age, of her own free will, chose Fairbank to be her guardian, and he was duly appointed, and gave bond as such; and that she thenceforth continued to reside at Enfield until the 22d of January 1856, when she, with the consent and approbation of Fairbank, went to Springfield in this commonwealth, with three other members of said Shaker family, with the intention and desire of returning to Enfield the same day; but, while at Springfield, was seized by her mother and brother, and against her wishes, protestation and resistance, and carried by railway to Chelmsford in the county of Middlesex, where she was now restrained.

*N. A. Leonard,* for the petitioner.

*D. S. Richardson,* for the respondent. The mother, on the death of the father, is entitled to control the minor children, and bound to support them, unless she has parted with the right. *Dedham* v. *Natick,* 16 Mass. 140. *Nightingale* v. *Withington,* 15 Mass. 274. The court will not take the daughter from her mother and natural guardian, without clear proof that, by the laws of Connecticut, such an indenture as this confers rights adverse to those of the mother. The statutes of Connecticut provide, that " the fathers and guardians of minors' may bind them by deed or indenture, as apprentices, to learn some trade or profession, with the assent of such minor expressed in the indenture by subscribing the same." Sts. of Conn. (ed. of 1854,) 394, 395. This indenture was not executed by " father or guardian ; " for, if " guardian " would include natural guardian, the addition of " father " was unnecessary. It does not bind the minor to learn any trade or profession ; and it is not executed by the minor. If the mother breaks this indenture, she may be liable in damages ; but it cannot be specifically enforced by *habeas corpus.*

Nor can the appointment of Fairbank, in Connecticut, as guardian, give him the right to the custody of the child, without proof that, by the law of that state, he has the right to take the

child out of the custody of her parent into his own custody. By the statutes of Massachusetts, the guardian of a minor has not that right. Rev. Sts. *c.* 79, § 4.

The chief justice, after interrogating the child as to her wishes, delivered the following opinion:

SHAW, C. J. This is not a question of mere property— whether the mother or Fairbank is entitled to the earnings of the minor. But the interest of the minor is the principal thing to be considered. *Commonwealth* v. *Hammond,* 10 Pick. 274. We are relieved from the necessity of going into the question, how far the indenture is valid and binding upon the minor under the laws of Connecticut. The only question is, how far it affects the mother's rights. And the court are all of opinion that, so far as the rights of the mother are concerned, she has relinquished them by this instrument, which operates either as a contract or an estoppel—and it is immaterial which—to prevent her from now setting up her rights. If the child should object, we should be obliged to regard the provisions of the indenture with greater care, and ascertain its legal force and effect in Connecticut, where it was made, and in which state apparently the parties had their domicil.

In all cases of this description, of the right to the custody and control of a female of an age to have a will, and a capacity to form some judgment for herself, it is the established custom of the court to ascertain the opinion or inclination of the minor. The weight of this depends on the minor's maturity of mind and capacity to judge. We are satisfied, by an examination, that this girl is capable of judging what will best promote her own welfare, and that she came into Massachusetts on a visit; that she was taken from the friends and associates under whose care and protection she came, clandestinely and forcibly, by her mother, with some assistance; that she is strongly inclined to remain with the society of Shakers; and that they take sufficient care of her education. We are therefore of opinion that she be discharged from the custody and restraint of her mother, and be at liberty to go, if she pleases, with her guardian appointed under the laws of Connecticut. *Ordered accordingly.*